**HAARMAN & REIMER CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Malcolm Baldridge, Secretary of Commerce; Paul O'Day, Acting Under Secretary of Commerce for International Trade, Department of Commerce; William T. Archey, Acting Commissioner of Customs; and, All District Directors of Customs, Defendants,**

**China National Native Produce & Animal By-Products Import and Export Corporation, Intervenor.**

**Court No. 81–1–00027.**

United States Court of International Trade.

Feb. 2, 1981.

Eugene L. Stewart, Terence P. Stewart and Paul W. Jameson, Washington, D.C., on the memorandum brief (Eugene L. Stewart and Terence P. Stewart, Washington, D.C., at the hearing), for the plaintiff.

Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D.C., David M. Cohen, Director, Commercial Litigation Branch, New York City, on the memorandum brief (Velta A. Melnbrencis, New York City, with him on the brief and at the hearing), for the defendants.

Shearman & Sterling, New York City (Donald L. Cuneo, Charles B. Manuel, Jr. and Nancy Turck, New York City, on the memorandum brief and at the hearing), for China National Native Produce & Animal By-Products Import and Export Corp., New York City, intervenor.

*Memorandum Opinion And Order Denying Application For Preliminary Injunction*

BOE, Judge.

From an examination of the record in the instant proceedings, it appears that on June 9, 1980, the plaintiff herein filed a petition with the United States Department of Commerce seeking the imposition of anti-dumping duties on menthol imported from the People's Republic of China, alleging that such merchandise is being or is likely to be sold in the United States at less than fair value. On November 25, 1980, the plaintiff, by way of amendment to its original petition, asserted the existence of "critical circumstances" with respect to the said imports of menthol within the purview of 19 U.S.C. section 1671b(e)(1).

In its preliminary determination published in the Federal Register on January 14, 1981, the Department of Commerce held that (a) there is a reasonable basis to believe or suspect that exports of natural menthol from the People's Republic of China are being, or are likely to be, sold in the United States at less than fair value within the meaning of 19 U.S.C. section 1673; (b) critical circumstances as alleged in plain-

tiff's amended petition do not exist with respect to imports of menthol from the People's Republic of China and, accordingly, liquidations will not be suspended retroactively in accordance with the statute so made and provided.

In its complaint instituting the above-entitled action, the plaintiff seeks (1) to enjoin the defendants from liquidating any entries or withdrawals from warehouse for consumption of menthol imported into the United States from the People's Republic of China, which remain unliquidated, on or after ninety (90) days prior to the publication of the preliminary determination of the Department of Commerce, that is—October 16, 1980; (2) to determine that "critical circumstances" exist with respect to imports of menthol from the People's Republic of China within the meaning of 19 U.S.C. section 1671b(e)(1) or in the alternative, to remand the proceedings to the Department of Commerce for further investigation and consideration.

In a prior order of this court under date of January 15, 1981, the application of the plaintiff for a Temporary Restraining Order seeking to enjoin the liquidation of any and all unliquidated entries of menthol from the People's Republic of China entered, or withdrawn from warehouse for consumption, on or after October 16, 1980, was denied.

In the within proceeding duly and regularly brought on for hearing before this court pursuant to its prior order, the plaintiff seeks to restrain the defendants *pendente lite* from liquidation of the unliquidated entries of menthol from the People's Republic of China entered or withdrawn from warehouse for consumption, on or after October 16, 1980. In said proceeding the plaintiff appeared by and through its attorneys, Eugene L. Stewart and Terence P. Stewart, the defendants appeared by and through one of its attorneys, Velta Melnbrencis, and the intervenor, China National Native Produce and Animal By-Products Import and Export Corporation (CNEC), appeared by and through its attorneys, Donald L. Cuneo, Charles B. Manuel, Jr. and Nancy B. Turck of the law firm of Shearman & Sterling.

The court having heard the evidence adduced, the arguments of counsel and considered the memoranda submitted by respective counsel together with all the files, documents and papers contained in the record herein, accordingly enters its decision and order with respect to plaintiff's application for a preliminary injunction together with its memorandum opinion in connection therewith.

In considering the requisite standards that are a prerequisite to preliminary injunctive relief, the court initially turns its attention to the plaintiff's likelihood of success in the trial of the within action on the merits.

Plaintiff contends that inasmuch as section 516A of the Tariff Act of 1930 as added by the Trade Agreements Act of 1979 (19 U.S.C. section 1516a) does not provide in an anti-dumping proceeding for a judicial review of a negative preliminary determination by the administering authority with respect to "critical circumstances," such a review necessarily is properly predicated under the residual jurisdictional grant provided in section 201 of the Customs Court Act of 1980 (28 U.S.C. section 1581(i)). In sum, the plaintiff relies on a recognized legal principle that in the absence of a persuasive showing that the legislative authority did not intend judicial review of a final administrative determination, a review will be accorded under the general principles of administrative law and the Administrative Procedure Act.[1] *Abbott*

---

1. It should be noted that the court does not conclude that the administrative determination in issue is a "final" agency action within the meaning of *Abbott Laboratories* and section 10(c) of the Administrative Procedure Act, 5 U.S.C. section 704. In the statutory scheme of the Trade Agreements Act of 1979, the challenged "critical circumstances" determination is provided under 19 U.S.C. section 1671b, which is denominated: Preliminary Determinations. A "critical circumstances" finding must be made as a part of the administering authority's *final* determination pursuant to 19 U.S.C. section 1671d(a)(2). Section 1671d is denomi-

*Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

Assuming for the purpose of argument that the challenged "critical circumstances" determination is a "final" agency action within the meaning of *Abbott Laboratories,* the judicial inquiry made must be as follows:

> Whether in the context of the entire legislative scheme the existence of that circumscribed remedy evinces a congressional purpose to bar agency action within its purview from judicial review. 387 U.S. at 141, 87 S.Ct. at 1511.

For the reasons stated hereafter, this court finds that the entire legislative scheme, indeed, evinces a congressional intent to bar judicial review of the agency action in question.

The House Judiciary Committee Report, H.R.Rep.No.96–1235 at 47, clearly indicates that section 1581(i), under which plaintiff predicates its present proceeding, is intended to be solely a residual grant of jurisdictional authority. It likewise clearly and expressly renounces any intention of creating a new cause of action thereby.

> *Subsection (i) is intended only to confer subject matter jurisdiction upon the court, and not to create any new causes of action not founded on other provisions of law.* [Emphasis supplied.]

As further stated in the Committee report, *supra* at 47:

> The purpose of this broad jurisdictional grant is to eliminate the confusion which currently exists as to the demarcation between the jurisdiction of the district courts and the Court of International Trade. This provision makes it clear that all suits of the type specified are properly commenced only in the Court of International Trade. The Committee has included this provision in the legislation to eliminate much of the difficulty experienced by international trade litigants who in the past commenced suits in the district courts only to have those suits dismissed

for want of subject matter jurisdiction. The grant of jurisdiction in subsection (i) will ensure that these suits will be heard on their merits.

It is noteworthy that in the enactment of the Customs Court Act of 1980, the Congress was particularly attentive to its predecessor act, the Trade Agreements Act of 1979. The two legislative statutes, serving as companion measures, not only broadened the jurisdictional scope of this court, but also redefined the scope and extent of the judicial review of this court particularly with respect to the administration of the countervailing duty and antidumping laws provided by earlier legislation. Thus, in broadening the jurisdictional authority of this court the Congress clearly has been ever mindful of the definitive extent, nature and time of the judicial review which it has authorized in the Trade Agreements Act of 1979. Again, this fact has been emphasized in the House Committee Report to the Customs Court Act of 1980, *supra* at 48:

> As in the case of subsection (a) of proposed section 1581, it is the intent of the Committee that the Court of International Trade not permit subsection (i), and in particular paragraph (4), to be utilized to circumvent the exclusive method of judicial review of those antidumping and countervailing duty determinations listed in section 516A of the Tariff Act of 1930 (19 U.S.C. § 1516a), as provided in that section. Since subsection (i) merely confers jurisdiction on the court and does not create any new causes of action, H.R. 7540 does not change the rights of judicial review which exist under section 516A.

This court cannot conceive of any explanatory language on the part of a legislative authority with respect to its intent to be more explicit than the further words contained in the House Committee Report, *supra* at 48:

---

nated: Final Determinations. Congress' intent to make certain preliminary determinations reviewable only in connection with the final de-

termination thereon is discussed on pages 1279–1280, *infra.*

*The Committee intends that any determination specified in section 516A of the Tariff Act of 1930, or any preliminary administrative action which, in the course of proceeding, will be, directly or by implication, incorporated in or superceded by any such determination, is reviewable exclusively as provided in section 516A. For example, a preliminary affirmative antidumping or countervailing duty determination or a decision to exclude a particular exporter from an antidumping investigation would be reviewable, if at all, only in connection with the review of the final determination by the administering authority or the ITC.* [Emphasis supplied.]

Turning to the Trade Agreements Act of 1979, it appears clear that in adding section 735(a)(3) to the Tariff Act of 1930 (19 U.S.C. section 1673d(a)(3)), the Congress has provided for the specific time when findings as to the existence of "critical circumstances" shall be made as well as the nature and content of such findings:

(3) Critical Circumstances Determinations.—If the final determination of the administering authority is affirmative, *then that determination, in any investigation in which the presence of critical circumstances has been alleged under section 733(e), shall also contain a finding of whether*—

(A)(i) there is a history of dumping in the United States or elsewhere of the class or kind of merchandise which is the subject of the investigation, or

(ii) the person by whom, or for whose account, the merchandise was imported knew or should have known that the exporter was selling the merchandise which is the subject of the investigation at less than its fair value, and

(B) there has been massive imports of the merchandise which is the subject of the investigation over a relatively short period. [Emphasis supplied.]

■ It is this final determination by the administering authority that Congress has specifically made judicially reviewable by this court. 19 U.S.C. section 1516a(a)(2)(B). Contrary to the assertion of the plaintiff that the silence of the statute with respect to a judicial review of a negative preliminary determination by the administering authority as to "critical circumstances" mandates the initiation of such a review under 28 U.S.C. section 1581(i), this court is of the opinion that the pattern of review as sculptured in 19 U.S.C. section 1516a indicates the intent of the Congress to specifically define *therein* those determinations made by the administering authority which are to be subject to judicial review. Thus, it cannot be assumed that the absence of a provision providing for the specific judicial review of a negative preliminary determination as to "critical circumstances" is an unintentional omission. Rather it must be considered as a part of the overall pattern and design of congressional intent. In this connection it will be noted that section 1516a, in addition to not providing for review of negative preliminary determinations as to "critical circumstances," likewise does not provide judicial review of any affirmative preliminary determination in an antidumping proceeding. Judicial review thereof is postponed until the time of the *final* determination. In short, in view of the definitive recognition which Congress has made with respect to the time and nature of the judicial review of preliminary determinations provided for in the Trade Agreements Act of 1979, this court is unable to accept the contention of the plaintiff that the absence of the right of judicial review of a negative preliminary determination as to "critical circumstances" legitimatizes the exercise of the provisions of the Administrative Procedure Act under the residual jurisdictional grant provided by section 1581(i). To hold otherwise would serve to foster and promote a "patchwork" of judicial review proceedings of administrative determinations in an antidumping investigation at time frames which Congress clearly has indicated its intention to circumscribe.

■ It is the opinion of this court, therefore, that the plaintiff is unlikely to prevail

in the trial of said action on the merits for the reason that said action has not been brought in conformity with the provisions of the Trade Agreements Act of 1979, which solely and exclusively provides for the time and manner of judicial review of the subject matter of the within proceeding.

This court is of the further opinion that in the instant proceedings, the plaintiff has failed to show to the satisfaction of the court its likelihood of success in the trial of this action on the merits with respect to the alleged error on the part of the administering authority in its negative preliminary determination as to the existence of "critical circumstances."

Minimal credible evidence, if any, has been offered with respect to neither of the two alternative, but mandatory, findings requisite to an affirmative preliminary determination as to the existence of "critical circumstances" by the administering authority, namely—(1) a history of dumping in the United States or elsewhere relating to the class or kind of merchandise which is the subject of the investigation[2] or (2) that the importer and/or the persons at whose account the merchandise was imported knew or should have known that the exporter was selling the merchandise which was the subject of the investigation at less than fair value.

The time during which the investigation in question was conducted by the administering authority was extended pursuant to statute by virtue of its "extraordinarily complicated" nature. Unknown to any of the parties to this proceeding, a country other than the exporting nation was selected from a group of five or six other countries exporting similar merchandise as a surrogate in the making of the preliminary determination by the administering authority. Although statistics offered by the plaintiff indicate an increase in the removal of the subject merchandise from warehouse for consumption in greater quantities dur-

ing the last quarter of 1980, in view of the testimony of the witnesses produced by the intervenor at the within proceedings, this court is in no manner satisfied that the plaintiff has demonstrated that the administering authority erred in not finding that the importers knew or should have known that the exporter was selling the subject merchandise at less than fair value.

In view of the foregoing conclusion of this court with respect to plaintiff's likelihood of success in a trial of this action on the merits, a prolonged discussion relating to the alleged irreparable injury which might be sustained by the plaintiff as a result of the failure of this court to grant a preliminary injunction is deemed unnecessary.

An affidavit by a staff attorney in the Department of Commerce, appended to defendants' memorandum brief, indicates that substantial amounts of menthol entered or withdrawn from warehouse for consumption in the period October 16, 1980—January 14, 1981, may remain unliquidated. Plaintiff's evidence with respect to the alleged irreparable injury suffered thereby, consists, however, primarily of an affidavit made by an employee of the plaintiff containing statements, *inter alia*, based on information and belief that most or all of the Chinese menthol "imported" in the relevant 90-day period has not been sold to end-users and that lost revenues and price suppression would result from the presence of such Chinese menthol in the marketplace.

The evaluation of the sufficiency of the evidence of the character offered by the plaintiff, referred to in Wright and Miller, *Federal Practice and Procedure: Civil* Section 2949 is of particular pertinence:

> [W]hen the primary evidence introduced by plaintiff is an affidavit made on information and belief rather than on personal knowledge, it generally is considered insufficient to support a motion for a preliminary injunction.

---

**2.** As explained in the House Report to the Trade Agreements Act of 1979, 79, H.R.Rep.No. 96–317 at 63, "History of dumping may be found to exist if the kind or class of merchandise under investigation was subject to a *dump-*

*ing finding* either in the United States or another country." [Emphasis supplied.] No evidence as to any such previous *dumping finding* has been adduced in this proceeding.

The statement in plaintiff's affidavit, however, is expressly contradicted by the testimony of witnesses presented by the intervenor at the hearing. The witnesses, who are major importers in the United States of Chinese menthol, testified that their contracts for the purchase of menthol with the Chinese exporter are made with a "lead time" of approximately six months to two years prior to actual delivery and importation and that generally all menthol so contracted is presold to their respective customers prior to actual delivery of the merchandise to the United States. It further appears that the last contract for the purchase of menthol from the Chinese exporter was made by the witness, Boody, in July 1980; whereas the last contract for the purchase of menthol from the Chinese exporter was made by the witness, Barasch, in January 1980.

Suffice it to say, it does not appear to the satisfaction of this court that the plaintiff has sustained its burden of demonstrating that irreparable injury will result to it by reason of the failure of this court to grant its application for a preliminary injunction.

The Government has filed at the time of hearing on the within application of the plaintiff its memorandum in opposition to plaintiff's motion for a preliminary injunction as well as in support of a motion to dismiss the above-entitled action for failure to state a claim upon which relief could be granted, filed contemporaneously therewith.

This court views defendants' motion to dismiss as dispositive in nature directed to the entire cause of action of the plaintiff and to which the plaintiff is entitled to respond in the manner provided by the rules of court. Accordingly, no disposition is or will be made with respect to defendants' motion to dismiss in the instant proceedings, said proceedings having been confined solely to the consideration of those matters pertaining and requisite to plaintiff's application for a preliminary injunction.

In view of the foregoing and good cause appearing, it is hereby

ORDERED that plaintiff's motion for a preliminary injunction, *pendente lite*, be and is hereby denied.