**SACILOR, ACIERIES ET LAMINOIRS de LORRAINE, et al., Plaintiffs,**

**v.**

**UNITED STATES, et al., Defendants,**

**U. S. Steel Corporation, et al., Intervenors.**

**Court No. 82–5–00683.**

United States Court of International Trade.

June 2, 1982.

---

1. 2 CIT ——, Slip Op. 81–99, 525 F.Supp. 885.

2. 2 CIT ——, Slip Op. 81–99, 525 F.Supp. 885; 2 CIT ——, Slip Op. 82–7; 2 CIT ——, Slip Op. 82–13.

Continu; and Aktiengesellschaft der Dillinger Huettenwerke.

Graubard, Moskovitz, McGoldrick, Dannett & Horowitz, New York City (Michael H. Greenberg, New York City, of counsel), for plaintiffs Arbed S.A., et al.

Graubard, Moskovitz & McCauley, Washington, D. C. (Alfred R. McCauley, Washington, D. C., of counsel), for plaintiff Thyssen A. G.

Coudert Brothers, New York City (Milo G. Coerper, New York City, of counsel), for plaintiffs Krupp Stahl A. G., et al.

Sharretts, Paley, Carter & Blauvelt, Washington, D. C. (Peter O. Suchman, Washington, D. C., of counsel), for plaintiff ESTEL Hoogovens, B. V.

Arent, Fox, Kintner, Plotkin & Kahn, Washington, D. C. (Stephen L. Gibson, Washington, D. C., of counsel), for plaintiff Stahlwerke Peine-Salzgitter A. G.

J. Paul McGrath, Asst. Atty. Gen., Washington, D. C. (David M. Cohen, Branch Director, Commercial Litigation Branch and Sheila N. Ziff, Commercial Litigation Branch, New York City, on the brief), for defendants, U. S., et al.

J. J. Mangan, Pittsburgh, Pa., of counsel, for intervenor U. S. Steel Corp.

Eugene L. Stewart, Washington, D. C., for intervenors Bethlehem Steel Corp. and Armco, Inc.

Cravath, Swaine & Moore, New York City (Joseph R. Sahid, New York City, of counsel), for *amicus curiae* Republic Steel Corp., et al.

## FINAL JUDGMENT

WATSON, Judge.

This action was started on May 17, 1982 by foreign steel producers seeking to enjoin the Department of Commerce from disclosing confidential information which the producers had submitted in response to questionnaires in antidumping investigations of carbon steel. They alleged that the Department of Commerce had decided to release the confidential information in response to requests made by attorneys for domestic

Windels, Marx, Davies & Ives, New York City (Pierre F. deRavel d'Esclapon, New York City, of counsel), for plaintiffs, Sacilor, Acieries et Laminoirs de Lorraine; Societe Lorraine de Laminage Continu; Societe Lorraine et Meridionale de Laminage

steel producers, which requests were general requests made *prior* to the submission of the confidential information and lacked the particularity and supporting reasons and other safeguards required by law and regulation. On that date, the Court issued a temporary restraining order. On the following day, the Court clarified the order to make certain that it applied only to pending antidumping proceedings and it granted another temporary restraining order in a similar action commenced by another foreign steel producer. It then consolidated the actions and ordered the trial on the merits advanced and consolidated with the hearing on the preliminary injunction, which thereafter took place on June 2, 1982. At that time, the Court granted motions to intervene by Bethlehem Steel Corporation, Armco Incorporated, and United States Steel Corporation. It also granted the application of counsel for Republic Steel Corporation, Inland Steel Company, Jones & Laughlin Steel Incorporated, National Steel Corporation and Cyclops Corporation to appear as *amicus curiae.*

The Court then heard argument from all parties relative to the claim by plaintiffs that the proposed release of confidential information was in violation of the law and regulations, specifically, section 777(c) of the Tariff Act of 1930, 19 U.S.C. § 1677f(c), and 19 C.F.R. 353.30. It also heard argument on the question of whether the Court had jurisdiction of the action.

In recognition of the speedy resolution of these matters which the law requires on both the administrative and judicial level, the Court resolved to decide the action immediately. At the conclusion of the hearing and based upon the arguments made, and all the papers filed, including the affidavits, memoranda and supporting documents, the Court issued the following final decision and order:

The Court considers 28 U.S.C. § 1581(i) [1] to be an unmistakable expression of legislative intent that this Court be the exclusive forum for actions against the United States which arise from the laws mentioned therein, which for convenience we refer to as the laws of international trade.

The specificity which is displayed in the preceding jurisdictional subsections,[2] is sim-

---

1. 28 U.S.C. § 1581(i) reads as follows:

"(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

"(1) revenue from imports or tonnage;

"(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

"(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

"(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

2. 28 U.S.C. § 1581(a) to (h) reads as follows:

"§ 1581. Civil actions against the United States and agencies and officers thereof

"(a) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930.

"(b) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516 of the Tariff Act of 1930.

"(c) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516A of the Tariff Act of 1930.

"(d) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review any final determination of the Secretary of Labor certifying or refusing to certify workers as eligible for adjustment assistance under the Trade Act of 1974 and any final determination of the Secretary of Commerce certifying or refusing to certify firms or communities as eligible for adjustment assistance under such Act.

"(e) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review any final determination of the Secretary of the Treasury under section 305(b)(1) of the Trade Agreements Act of 1979.

"(f) The Court of International Trade shall have exclusive jurisdiction of any civil action involving an application for an order directing the administering authority or the International Trade Commission to make confidential information available under section 777(c)(2) of the Tariff Act of 1930.

ply a combination of a repetition of details of the former jurisdiction of the Court, together with specific mention of newer actions which have been specially provided for. Unless these preceding jurisdictional subsections express or contain in their manifest legislative history, a limitation on jurisdiction of other related actions, they do not operate to diminish the broad grant of jurisdiction contained in section 1581(i) or to nullify causes of action which originate elsewhere.

■ For this reason, the specific grant in section 1581(c) of jurisdiction over actions commenced under section 516A of the Tariff Act of 1930, that is to say, those reviews specially provided for at various stages of the administration of the antidumping and countervailing duty laws, does not preclude jurisdiction over other actions which can arise from those laws, of which this is just one example. This result was clearly anticipated by Congress when it stated that, "the Court is not prohibited from entertaining a civil action relating to an antidumping or countervailing duty proceeding so long as the action does not involve a determination specified in section 516A of the Tariff Act of 1930." H.R.Rep.No.96–1235, 96th Cong.2d Sess., at 47–48 (1980), U.S.Code Cong. & Admin.News 1980, pp. 3729, 3760. See also, *Royal Business Machines, Inc. v. United States*, 69 C.C.P.A. ——, 669 F.2d 692 (1982).

It is also apparent that the Congressional caution against the creation of new causes of action, at page 48 of the above-mentioned House Report, is directed to the fashioning of actions which were previously unknown to the law, and not to the assertion of jurisdiction by this Court over actions which formerly would have been cognizable in the district courts.

■ In the same vein, the grant of jurisdiction in section 1581(f) over actions to *force* disclosure under section 777(c)(2) of the Tariff Act of 1930, 19 U.S.C. § 1677f, does not operate to bar jurisdiction over an action to *block* disclosure, which action has its origin elsewhere. See for example 28 U.S.C. § 2640(d).

The Court finds the case of *Haarman & Reimer Corp. v. United States*, 1 C.I.T. ——, (1981), 509 F.Supp. 1276 (1981) of questionable import and clearly distinguishable in that the action sought to be brought in that case was a reverse facet of one of the specific determinations made reviewable under section 516A of the Tariff Act of 1930, so that the congressional intent expressed at page 48 of House Report 96–1235 may apply, in that any determination which will be directly or by implication incorporated in, or superseded by, a specific later reviewable determination, will not be independently reviewable. The same cannot be said of the decision under dispute here. It is final and it is independent, factually and legally, from the later determinations that will be made. The correctness of this decision cannot be reviewed in a meaningful way in a judicial review at a later stage of the administrative proceedings.

The Court views this action as a conventional challenge to final agency action by an aggrieved party, within the meaning of the Administrative Procedure Act, 5 U.S.C. § 701 et seq. It places the action in the context of prevailing law in which there is a

"(g) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review—

"(1) any decision of the Secretary of the Treasury to deny or revoke a customhouse broker's license under section 641(a) of the Tariff Act of 1930; and

"(2) any order of the Secretary of the Treasury to revoke or suspend a customhouse broker's license under section 641(b) of the Tariff Act of 1930.

"(h) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review, prior to the importation of the goods involved, a ruling issued by the Secretary of the Treasury, or a refusal to issue or change such a ruling, relating to classification, valuation, rate of duty, marking restricted merchandise, entry requirements, drawbacks, vessel repairs, or similar matters, but only if the party commencing the civil action demonstrates to the court that he would be irreparably harmed unless given an opportunity to obtain judicial review prior to such importation."

strong tendency, if not a presumption, towards reviewability of agency actions which are final and have an adverse effect on a party. *Abbot Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The Court finds no express or even implied preclusion of this action from any source. On the contrary, the maintenance of this action is in harmony with the best principles of administrative law. *Suwannee Steamship Co. v. U. S.*, 79 Cust.Ct. 19, C.D. 4708, 435 F.Supp. 389, (1977). See e.g., 28 U.S.C. § 2631(i).

Turning to the merits, the Court finds that plaintiffs have demonstrated that the International Trade Administration of the Commerce Department has proceeded herein in direct violation of the statute. The statute displays an extreme sensitivity in the handling of confidential information, with meticulous care shown in providing first, for the maintenance of confidentiality; second, for the determination of unwarranted designations of confidentiality; and third, for limited disclosure. See section 777(c)(1) of the Tariff Act of 1930, 19 U.S.C. § 1677F(c)(1).[3] The provision requiring a party to describe the information requested, *with particularity* and to provide *reasons* for the request must be viewed with the utmost seriousness. It is among the most delicate and important provisions in the statute and touches on some of the most sensitive decisions that have to be made in the administrative process. In recognition, the relevant regulations contain a requirement that the applicant for disclosure demonstrate "good cause" for the release of the information and the regulations further require that the Secretary of Commerce "shall weigh whether the need of the person requesting the information outweighs the need of the person submitting it for continued confidential treatment." 19 C.F.R. § 353.30.[4]

**3.** 19 U.S.C. § 1677F(c)(1) reads as follows:

(c) Limited disclosure of certain confidential information under protective order.—

(1) Disclosure by administering authority or Commission.—

(A) In general.—Upon receipt of an application, which describes with particularity the information requested and sets forth the reasons for the request, the administering authority and the Commission may make confidential information submitted by any other party to the investigation available under a protective order described in subparagraph (B).

(B) Protective order.—The protective order under which information is made available shall contain such requirements as the administering authority or the Commission may determine by regulation to be appropriate. The administering authority and the Commission shall provide by regulation for such sanctions as the administering authority and the Commission determine to be appropriate, including disbarment from practice before the agency.

**4.** 19 C.F.R. § 353.30(a) reads as follows:

Limited disclosure of certain confidential information under an administrative protective order.

(a) In general. (1) Any confidential information (other than information submitted in confidence by a foreign government which is restricted from disclosure pursuant to statute or Executive Order), including some or all of the information described in § 353.29(c), may be made available to an attorney or other representative under a protective order as described in paragraph (b) of this section. Forms for submitting requests for disclosure pursuant to a protective order incorporating the terms of this regulation will be made available. The application for disclosure pursuant to protective order filed by an attorney or other representative of a party to the proceeding must:

(i) Describe with particularity the information requested and set forth the reasons for the request;

(ii) Indicate the procedures to be followed to avoid unauthorized disclosure of the information requested; and

(iii) Demonstrate good cause for the release of such information.

(2) Upon receipt of an application for disclosure of confidential information under a protective order, the Secretary will inform the person from whom the information was obtained of the request and provide an opportunity for such person to comment thereon.

(3) In determining whether to release information under a protective order, the Secretary shall weigh whether the need of the person requesting the information outweighs the need of the person submitting it for continued confidential treatment. Account also shall be taken of the probable effectiveness of the sanctions described under paragraph (e) of this section, or other sanctions as may be prescribed for breach of the order. Generally, disclosure under a protective order will be made only to attorneys who are subject to disbarment from practice in the event of a violation of the order.

(4) Should it be determined to release information under a protective order, the person

It is clear to the Court that neither the statute nor the regulations have been honored in this case. It is not necessary at this point for the Court to elaborate on what would be the proper standards to apply in deciding whether to disclose, since it is plain that not even token consideration was given to the proper procedures here. It suffices to say, *at this time*, that the release of confidential information must be the result of a reasoned decision which carefully evaluates the need of the applicant as opposed to the demands of confidentiality. This decision should not confuse the role and need of a party to an administrative investigation with that of a litigant in a court of law and it should not reflect an abdication of the investigative duties of the agency. At this juncture the Court is favorably impressed with the analogy made to the discovery rules of federal procedure in the period when "good cause" had to be shown.

With respect to the proper relief in this case, the Court has no hesitation in applying its powers of injunctive relief. The Court considers the failure to honor basic statutory safeguards designed to protect information which is of vital importance to a party, to be a serious injury which cannot be repaired by conventional legal remedies. *Bray v. U. S.*, 515 F.2d 1383, 1394–1395 (Ct.Claims 1975). *Deering Milliken Inc. v. Johnston*, 295 F.2d 856, 862–863 (4th Cir. 1961). *Diapulse Corp. v. F.D.A.*, 500 F.2d 75 (2d Cir. 1975). *Doe v. General Hospital*, 313 F.Supp. 1170 (D.D.C. 1970), *motion denied* 434 F.2d 423, (D.C.Cir.) supplemented 434 F.2d 427 (D.C.Cir.1970).

Furthermore, as regards the balancing of the harm to the various parties as well as in considering the public interest, the Court finds that the granting of injunctive relief is favored. First of all, the injunction will *not* prevent release if it is done in compliance with the statute and regulations, and the non-confidential summaries remain fully available. Second, the information is in the hands of the investigative agency and the orderly progress of its investigation is not meaningfully impeded. Third, the discouragement of unlawful conduct in the administration of the laws is of paramount importance.

Finally, in the long term, all sides in these proceedings will benefit from the lawful observance of the statutory guidelines for the release of confidential information. Unlawful disclosure is a threat to domestic parties as well as foreign parties and could lead to lack of cooperation in these investigations. On the other hand, the observance of all the carefully drawn statutory protections for confidential information increases the likelihood that the investigating agencies will receive the maximum amount of information and will therefore be able to arrive at a fully-informed decision.

In the face of these considerations, it would be a violation of elementary considerations of justice and fairness to refrain from exercising the only judicial powers which are capable of providing meaningful relief.

While the Court is impressed with the arguments offered by intervenors with respect to disclosing confidential information to in-house counsel, it does not deem it necessary to the disposition of this action to reach that question at this time.

Accordingly, it is hereby

ORDERED that defendants and all persons and agencies under their control are enjoined from making or permitting any release or disclosure pursuant to any request made on or before May 17, 1982, to any person or entity (other than an officer or employee of the Department of Commerce who is directly concerned with carrying out the investigation in connection with which the information was submitted) of any information submitted to the Department by any plaintiff in any pending antidumping investigation here involved and designated confidential.

submitting the information will be so notified. If the person submitting the information does not agree to the release of the information under protective order, such information shall be returned to the submitting person and not considered in the proceeding.