**SMITH CORONA GROUP, SCM Corporation, Plaintiff,**

v.

**The UNITED STATES, Defendant,**

**and**

**Brother Industries, Ltd., and Brother International Corporation, Intervenors.**

Court No. 84–1–00046.

United States Court of International Trade.

Aug. 7, 1984.

**416**

Stewart & Stewart (Eugene L. Stewart, Terence P. Stewart, and James R. Cannon, Jr.), Washington, D.C., for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, and Velta A. Melnbrencis, New York City, for defendants.

Tanaka, Walders & Ritger (H. William Tanaka and Lawrence R. Walders), Washington, D.C., for defendants-intervenors.

## OPINION AND ORDER

RESTANI, Judge:

Defendants-intervenors, Brother Industries, Ltd. and Brother International Corporation ("Brother"),[1] move pursuant to Rule 12(b)(1) to dismiss plaintiff's action for review of a December 16, 1983 letter ruling in which the United States Department of Commerce Department ("Commerce") de-

cided to exclude the Brother EP–20 personal electronic printer ("EP 20") from the scope of an antidumping duty order on personal electronic typewriters ("PETS"). Plaintiff, Smith Corona Group of SCM Corporation ("SCM"), a domestic manufacturer of PETS, instituted this action on January 13, 1984, predicating subject matter jurisdiction on section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (1982) and 28 U.S.C. § 1581(c) (1982), and alternatively upon 28 U.S.C. § 1581(i) (1982) and 5 U.S.C. §§ 701–706 (1982).

In this motion Brother challenges the existence of subject matter jurisdiction which would support judicial review of the disputed decisions. Defendant United States asserts that there is jurisdiction under 28 U.S.C. § 1581(i).

### Facts

On April 9, 1979 SCM filed a dumping petition with the United States Department of the Treasury alleging the sale of PETS from Japan at less than fair value.[2] On May 9, 1980, Commerce published an antidumping order regarding PETS from Japan.[3] On March 16, 1981, Commerce published a notice of intent to conduct administrative reviews of certain antidumping findings and orders pursuant to section 751 of the Tariff Act, as amended 19 U.S.C. § 1675 (1982),[4] after which Commerce began a series of annual reviews ("751 reviews") concerning PETS exported by various Japanese producers.[5] In these 751 reviews, Commerce considered whether certain Brother models other than the EP–20 were within the scope of the antidumping duty order.

On June 29, 1982, Brother requested a ruling from Commerce that their product model EP–20 was not covered by the out-

---

1. "Brother" will designate both defendant-intervenors unless otherwise noted.

2. Notice of initiation of investigation was published on May 18, 1979 at 44 Fed.Reg. 29191 (May 18, 1979).

3. Commerce's antidumping order on PETS from Japan was published at 45 Fed.Reg. 30618 (May 9, 1980).

4. Notice of intent to conduct administrative reviews was published at 46 Fed.Reg. 16921 (March 16, 1981).

5. See 46 Fed.Reg. 23278 (April 24, 1981); 47 Fed.Reg. 31913 (July 23, 1982); and 47 Fed.Reg. 43992 (October 5, 1982).

standing antidumping duty order covering PETS from Japan. Brother attached to its request a ruling by Customs [6] holding that for purposes of classification, the EP–20 would not be considered a typewriter, but rather, would be classifiable under a tariff provision for calculating machines because it contained a calculating function. On July 7, 1982, Commerce responded by issuing a letter to Brother's counsel in which it held the model EP–20 to be "outside the scope of the antidumping duty order on [PETS] from Japan." Commerce issued its decision based upon a description of the EP–20 and Customs Service Ruling 803148, which Brother had attached to its letter requesting a Commerce ruling relating to the EP–20.

After discovery of Commerce's July 7, 1982 letter [7] counsel for SCM requested on June 2, 1983 that Commerce re-open the issue of whether the EP–20 is within the scope of the outstanding antidumping duty order and permit submission of evidence and written views concerning the EP–20. [8] On July 13, 1983, plaintiff submitted its written request for reconsideration of the decision by Commerce that the EP–20 was excluded from the outstanding dumping order. In its written submission, plaintiff specifically requested that Commerce consider the subject issue within the context of the then ongoing 751 review. [9]

Despite SCM's request, and despite the fact that the agency had considered the issue of coverage of the outstanding order with respect to several other machines in the context of 751 review proceedings, it did not issue the ruling on the EP–20 in the context of the then ongoing 751 review, which ruling has since been published. [10]

Thereafter, on September 30, 1983, plaintiff submitted additional evidence concerning the scope of the dumping order with respect to the EP–20. [11] Rather than holding its ruling on the issue until issuance of a determination in the May 1981—May 1982 751 review, [12] Commerce issued a letter ruling on December 16, 1983, in which it reaffirmed its decision to exclude the Brother EP–20 from the scope of the antidumping duty order.

### Jurisdiction

■ Plaintiff has the burden of demonstrating that jurisdiction exists. *McNutt v. General Motors Acceptance Corporation,*

---

**6.** Customs' ruling concerning classification of the Brother EP–20 is dated June 9, 1982 and is numbered 803148.

**7.** Plaintiff's counsel discovered Brother's request and Commerce's ruling in May of 1983 in the Public File maintained by Commerce where it had been placed. SCM asserts that it was entitled to service of Brother's request for the ruling at issue and of Commerce's responsive letter ruling pursuant to 19 C.F.R. § 353.46 (1983). Because this issue bears solely upon the question of plaintiff's timeliness in bringing this action—which we perceive to present no problem—we need not address it.

**8.** Plaintiff's Exhibit C to its complaint, a memorandum to file from the casehandler at Commerce, memorializes plaintiff's request for reconsideration and permission to comment.

**9.** Intervenor indicates that such a ruling would have been inappropriate. It alleges that the EP–20 was not imported until after the period covered by that review, April 21, 1980 to May 20, 1981.

**10.** On February 24, 1983, Commerce published notice in the Federal Register of the results of its 751 review of the subject antidumping duty order with respect to two foreign manufacturers, and with respect to whether models 8300 and 9300 manufactured by Brother were within the scope of the antidumping order. *See* 48 Fed.Reg. 7768–71. The period of investigation by Commerce was stated therein to have been January 4, 1980 through April 30, 1981.

On September 9, 1983, Commerce published notice in the Federal Register of the results of its final determination in the 751 review of the antidumping order covering PETS from Japan manufactured by Brother Industries, Ltd. entered during the period April 21, 1980 through May 20, 1981. *See* 48 Fed.Reg. 40761, which is the subject of Consolidated Court Nos. 83–10–01436 and 83–10–01522.

**11.** Brother responded by letter dated July 8, and July 18, 1983, as amended July 21, 1983.

**12.** The preliminary determination in that 751 review concerned, and upon publication should include, rulings on whether each of 17 different model typewriters are included in the scope of the antidumping duty order. Neither Government defendant nor intervenor has objected to the assertion that the EP–20 is not one of those machine models to be considered.

298 U.S. 178, 188–89, 56 S.Ct. 780, 784–85, 80 L.Ed. 1135 (1936) *cited with approval in United States v. Biehl,* 3 C.I.T. 158, 160, 539 F.Supp. 1218, 1220 (1982); *see also Vivitar Corporation v. United States,* 7 C.I.T. ——, 585 F.Supp. 1419 at 1422 (1984); *718 Fifth Avenue Corporation v. United States,* 7 C.I.T. ——, Slip Op. 84–39 at 3 (April 13, 1984). For the following reasons, we find that SCM has met its jurisdictional burden.

■ The parties are in agreement that 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. 1516a(a)(2)(B)(iii) ("§ 516A") does not support subject matter jurisdiction in this matter. The contested letter is not a determination reviewable under § 516A because neither the decision nor a notice thereof has been published, and because the decision was neither made in nor directly or impliedly incorporated into a 751 review determination under 19 U.S.C. § 1675(a). Consequently, the decision cannot be challenged in this court pursuant to § 516A. *Compare Smith-Corona Group, Consumer Products Division, SCM Corporation v. United States,* 1 C.I.T. 89, 507 F.Supp. 1015 (1980). The end result is simply that, since Commerce's decision is not reviewable under § 516A, 28 U.S.C. § 1581(c)[13] does not provide this court with jurisdiction.

In contrast, the court finds that jurisdiction of this action is supported by plain-tiff's alternate basis, *i.e.* 28 U.S.C. § 1581(i).[14] Brother argues that the letter at issue is not reviewable pursuant to 28 U.S.C. § 1581(i) because it is a "preliminary administrative action" which "will be, directly or by implication, incorporated in or superseded by" a 751 review determination. Brother relies on language from a House Committee Report,[15] on various cases in which section 1581(i) jurisdiction was found to be inappropriate,[16] and on distinctions it attempts to draw between those cases in which section 1581(i) successfully served as a basis for subject matter jurisdiction and the present case.

The facts before us present an appropriate case for subject matter jurisdiction under section 1581(i). As government counsel points out, since Commerce has decided that the EP–20 is outside the scope of the outstanding dumping order covering PETS from Japan,[17] the agency is not including the EP–20 in its proceedings to review that order and is not ordering the Customs Service to suspend the liquidation of entries of the EP–20 pending the publication of any 751 review determination. It is true that the question of a dumping order's scope may be treated in 751 review proceedings. *See, e.g., Diversified Products Corp. v. United States,* 6 C.I.T. ——, 572 F.Supp. 883 (1983). However, the specific decision challenged here in all likelihood will not be considered by Commerce in a 751 review,

---

**13.** 28 U.S.C. § 1581(c) provides:

(c) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516A of the Tariff Act of 1930.

**14.** 5 U.S.C. §§ 701–706, the Administrative Procedure Act ("APA") does not provide a basis for jurisdiction where none exists otherwise. *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). But we understand plaintiff to allege jurisdiction on the basis of the APA only in conjunction with 28 U.S.C. § 1581(i).

**15.** The House Report upon which Brother relies states:

The Committee intends that any determination specified in Section 516A of the Tariff Act of 1930, or any preliminary administrative action which, in the course of proceeding, will be, directly or by implication, incorporated in

or superseded by any such determination, is reviewable exclusively as provided in Section 516A.

H.R.Rep. 1235, 96th Cong., 2d Sess. 48 (1980).

**16.** These cases are distinguishable on their facts. For example, in *Haarman & Reimer Corporation v. United States,* 1 C.I.T. 148, 509 F.Supp. 1276 (1981), the determination involved was to be incorporated in or superseded by a later determination specifically reviewable under § 516A. In *Haarman & Reimer,* the ITA was by statute required to include the particular determination for which plaintiff sought review in its final determination with respect to "critical circumstances."

**17.** The scope of the original antidumping order was defined by reference to Customs tariff classification categories. The Customs Service has ruled that the EP–20 does not fall into these categories.

so that there will not be a determination reviewable under § 516A.[18]

■ Because the parties agree that § 516A, as amended does not provide jurisdiction in the present case, and since plaintiff is left with an action concerning a final Commerce decision which relates to an antidumping order, which decision should be reviewable but which is not and will not be judicially reviewable by the traditional method, the court's broad residual jurisdiction under 28 U.S.C. § 1581(i) may be invoked. *See Sacilor Acieries et Laminoirs de Lorraine v. United States*, 3 C.I.T. 191, 193, 542 F.Supp. 1020, 1023 (1982), ("the specific grant in section 1581(c) of jurisdiction over actions commenced under section 516A of the Tariff Act of 1930, that is to say, those reviews specially provided for at various stages of the administration of the antidumping and countervailing duty laws, does not preclude jurisdiction over other actions which can arise from those laws ..."). In addition, the Court of Appeals for the Federal Circuit also has recognized the principle that § 516A is *not* the exclusive remedy for all grievances arising from the administration of the antidumping law. *Royal Business Machines, Inc. v. United States*, 69 C.C.P.A. 106, 669 F.2d 692, 701 (1982) (citing H.R.Rep. No. 1235, 96th Cong., 2d Sess. 33, 47, 48 (1980) (Subsection (i)(4) [of 28 U.S.C. § 1581] makes it clear that "the court is not prohibited from entertaining a civil action relating to an antidumping or countervailing duty proceeding so long as the action does not involve a challenge to a determination specified in section 516A of the Tariff Act of 1930.")). *Royal Business Machines* dealt with § 1581(i) jurisdiction in the case of a challenge to a determination of the scope of an antidumping order. The court found the determination not reviewable because the merchandise at issue was specifically referenced in the final determination of the agency. Therefore, the appellant should have challenged the scope determination by properly seeking review of the original antidumping determination under § 516A instead of requesting clarification of scope and then seeking review of the agency's clarifying decision under § 1581(i). But in addressing § 1581(i) jurisdiction, the court stated at 669 F.2d 702, "unless there is an express factual finding or legal conclusion with respect to the scope of the antidumping duty order ('description of the merchandise involved'), section 516A would not preclude an action based on section 1581(i)." [19]

Here, no such specific finding was made in a previous determination reviewable under § 516A. As admitted by intervenor EP–20's were not even imported during the periods covered by such determinations. Furthermore, it is extremely unlikely that Commerce might include or incorporate the specific decision challenged here in a future 751 review determination since Commerce has issued two letter rulings, foreclosing the expansion of the dumping order's coverage. *See also* footnote 18, *supra*. Moreover, Commerce is under no apparent obligation to include the present decision in any future review.[20] *Cf. Haarman & Reimer Corporation v. United States*, 1 C.I.T. 148, 509 F.Supp. 1276 (1981); *see* footnote 16, *supra*. It would be grossly unfair if plaintiff's opportunity for judicial review of a matter with present injury potential rested upon the remote possibility of particular action by Commerce officials. Congress could not have intended this result.

18. Besides Commerce's previous letter rulings themselves and the government's statement that Commerce will not be reviewing the decision at issue in any future 751 review, the fact that Brother's request for a ruling on the EP–20 and Commerce's response were not served upon plaintiff in accordance with Commerce regulations provides additional evidence that these written views were never "intended to be considered in connection with a proceeding." *See* 19 C.F.R. § 353.46.

19. *See Ceramica Regiomontana, S.A. v. United States*, 5 C.I.T. ——, 557 F.Supp. 596 (1983) for an example of a different type of determination which was found to be outside § 516A but was nonetheless found to be reviewable.

20. Neither the reference to Customs tariff categories in the original antidumping order here nor continued reference to such categories in a future determination amount to the specific finding discussed in *Royal Business Machines* that would preclude § 1581(i) jurisdiction.

Consequently, Commerce's decision regarding the EP–20 may be considered a final agency action which an aggrieved person may challenge pursuant to 28 U.S.C. § 2631(i) (which references the APA) through an action instituted pursuant to 28 U.S.C. § 1581(i), as plaintiff has done here.

Although plaintiff has not alleged, nor has any other party referred to, any specific jurisdictional subsection under section 1581(i),[21] we note that jurisdiction exists as provided in section 1581(i)(4) as this subsection relates to sections 1581(c)[22] and to 1581(i)(2).[23]

For these reasons, SCM has met its jurisdictional burden, and Brother's motion to dismiss for lack of subject matter jurisdiction is denied.

**21.** 28 U.S.C. § 1581(i) provides in relevant part:
(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section ..., the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—
(1) revenue from imports or tonnage;
(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

**22.** *See* footnote 13, *supra.*

**23.** *See* footnote 21, *supra* (§ 1581(i)(2)).