**NATIONAL CUSTOMS BROKERS AND FORWARDERS ASSOCIATION OF AMERICA, INC., Plaintiff,**

**v.**

**UNITED STATES; Lloyd Bentsen, Secretary of the Treasury; John P. Simpson, Deputy Assistant Secretary of the Treasury for Regulatory, Tariff and Trade Enforcement; George J. Weise, Commissioner of Customs, Defendants,**

**Air Courier Conference of America, UPS Worldwide Forwarding, Inc. and UPS Customhouse Brokerage, Inc., International Bonded Couriers, Inc. and TNT Skypak International Express, Inc.; DHL Airways, Inc.; Federal Express Corporation, Defendant–Intervenors.**

Slip Op. 94–129.

Court No. 94–07–00423.

United States Court of International Trade.

Aug. 16, 1994.

Tompkins & Davidson, Brian S. Goldstein, Laurence M. Friedman and Harvey A. Isaacs, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Rhonda K. Schnare, (Richard McManus, U.S. Customs Service of counsel), for defendants.

Ross & Hardies, Myles J. Ambrose, Joseph S. Kaplan, Evelyn M. Suarez, John J. Vecchione and Stephen M. DeLuca, for defendant-intervenors Air Courier Conference of America, UPS Worldwide Forwarding, Inc. and UPS Customhouse Brokerage, Inc., Intern. Bonded Couriers, Inc. and TNT Sky-Pak Intern. Express, Inc.

Winston & Strawn, Eric L. Hirschhorn, Peter N. Hiebert, Edward F. Gerwin, Jr. and John R. Keys, Jr., for defendant-intervenor DHL Airways, Inc.

Mudge Rose Guthrie Alexander & Ferdon, Richard H. Abbey, Joseph J. Aronica and Edith A. Eisner, for defendant-intervenor Federal Express Corp.

## OPINION

TSOUCALAS, Judge:

On July 25, 1994, pursuant to Rule 65(b) of the Rules of this Court, National Customs Brokers and Forwarders Association of America, Inc. ("NCBFAA") requested, and the Court granted, a temporary restraining order ("TRO"). Plaintiff sought to enjoin the Department of the Treasury and the United States Customs Service ("Customs") from implementing the interim regulations published in the FEDERAL REGISTER on June 13, 1994. *Express Consignments; Formal and Informal Entries of Merchandise; Administrative Exemptions ("Rules and Regulations")*, 59 Fed.Reg. 30,289 (1994). The proposed interim regulations, scheduled to become effective on July 28, 1994, increase the dollar limit on certain administrative exemptions and expand the class of persons deemed eligible to make informal entries of exempt merchandise.

Concurrently with the issuance of a TRO, the Court scheduled a hearing on plaintiff's motion for a preliminary injunction pursuant to USCIT Rule 65(a). Subsequently, on August 9, 1994, a full hearing was held to determine whether a preliminary injunction should issue. At the August 9th hearing, plaintiff acquiesced to the disposition of this action on the merits concurrently with the issuance or withholdment of a preliminary injunction.

Plaintiff is a trade association which represents licensed customs brokers and affiliated associations throughout the United States. Defendant-intervenor Air Courier Conference of America is an association representing the interests of the express courier and carrier industry. Defendant-intervenors UPS Worldwide Forwarding, Inc. and UPS Customhouse Brokerage, Inc. ("UPS"), International Bonded Couriers, Inc. ("IBC"), TNT SkyPak International Express, Inc. ("TNT"), and Federal Express Corporation ("FED EX") provide integrated international document and small package delivery. DHL Airways, Inc. ("DHL") provides express courier delivery service domestically and internationally.

ACCA, UPS, IBC, TNT, FEDEX and DHL presented cross claims against the Federal defendants contesting the interim regulations' requirement of "entry" for low value exempt merchandise.

### Background

On December 8, 1993, the President signed into law the North American Free Trade Agreement Implementation Act ("the Act").[1] Title VI of the Act, popularly known as the "Customs Modernization Act" (the "Mod Act"), amended numerous customs laws. In particular, section 651 of the Mod Act amended section 321 of the Tariff Act of 1930, 19 U.S.C. § 1321 (1988), which authorizes administrative exemptions from customs duties and requirements for certain low value shipments. Central to this action, are the new statutory minimums increasing the dollar amounts defining the exemptions for *de minimis* shipments under section 321.[2]

On June 13, 1994, Customs published in the FEDERAL REGISTER proposed inter-

---

1. North American Free Trade Implementation Act, Pub.L. No. 103–182, 107 Stat.2057 (1993).

2. Section 1321 now provides:

§ 1321. **Administrative exemptions**
　(a) The Secretary of the Treasury, in order to avoid expense and inconvenience to the

Government disproportionate to the amount of revenue that would otherwise be collected, is authorized, under such regulations as he shall prescribe, to—
　. . .
　(2) admit articles free of duty and of any tax imposed on or by reason of importation, but

im regulations intended to implement sections 651 and 681 of the Act and addressing practices with regard to shipments qualifying for informal entry procedures pursuant to 19 U.S.C. § 1498 (1988).

The interim regulations, *inter alia,* amend 19 C.F.R. § 143.26 to expressly allow consignees to make entry of low value exempt merchandise in accordance with informal entry procedure and increase to $200 the dollar limit under which merchandise may be entered free of duty and tax.[3]

A 30–day solicitation period for written comments with respect to the substance and the effective date of the proposed regulations commenced on the date that notice of the regulations was published in the FEDERAL REGISTER. The regulations were to become effective on an interim basis on July 28, 1994, fifteen days after the close of the comment period.

ACCA, UPS, IBC, TNT, FEDEX and DHL presented cross claims against the Federal defendants contesting the interim regulations' requirement of "entry" for low value exempt merchandise.

*Discussion*

A. *Jurisdiction and Standing*

■ Plaintiff carries the burden of demonstrating that the Court of International Trade has jurisdiction to hear and determine this case. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Smith Corona Group, SCM Corp. v. United States,* 8 CIT 100, 102, 593 F.Supp. 415, 417–18 (1984). Plaintiff asserts that the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1581(i) (1988).[4] Specifically, NCBFAA claims that jurisdiction exists under subparagraphs (1), (2) and (4) of this provision. Defendant does not contest the court's jurisdiction.

■ Section 1581(i) is a "residual" jurisdiction provision which grants exclusive jurisdiction to the Court of International Trade concerning issues relating to the antidumping duty law which are not specifically covered by other subparagraphs of section 1581. This section may be invoked as a basis for subject matter jurisdiction where another subsection of § 1581 is unavailable or when the remedy afforded by the other subsection would be "manifestly inadequate." *See Asociacion Colombiana de Exportadores de Flores (Asocoflores) v. United States,* 13 CIT 584, 717 F.Supp. 847 (1989), *aff'd,* 903 F.2d 1555 (Fed.Cir.1990). *See also Miller & Co. v. United States,* 824 F.2d 961, 963 (Fed.Cir. 1987), *cert. denied,* 484 U.S. 1041, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988).

*Rules and Regulations,* 59 Fed.Reg. at 30,296.

---

the aggregate fair retail value in the country of shipment of articles imported by one person on one day and exempted from the payment of duty shall not exceed an amount specified by the Secretary by regulation, but not less than—
...
(C) $200 in any other case.

19 U.S.C. § 1321(a)(2)(C) as amended by the Customs Modernization Act § 651 (December 8, 1993); *see* 19 U.S.C.A. § 1321 (West Supp.1994).

**3. § 143.26 Party who may make informal entry of merchandise.**

(b) *Shipments valued at $200 or less.* A shipment of merchandise valued at $200 or less which qualifies for informal entry under 19 U.S.C. 1498 and meets the requirements in 19 U.S.C. 1321(a)(2) (see §§ 10.151, 10.152, 10.-153, 145.31, 145.32, 148.51, 148.64, of this chapter) may be entered by the owner, purchaser, or consignee of the shipment or, when appropriately designated by one of these persons, a Customs broker licensed under 19 U.S.C. 1641.

4. Section 1581(i) states, in part, as follows:

(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—
(1) revenue from imports or tonnage;
(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

28 U.S.C. § 1581(i) (1988).

■ Generally, challenges to classification, valuation and entry of merchandise are reviewable pursuant to 28 U.S.C. § 1581(a)[5] after the administrative remedies afforded by 19 U.S.C. § 1514[6] and § 1515[7] have been exhausted. *United States v. Uniroyal, Inc.*, 69 CCPA 179, 182, 687 F.2d 467, 471 (1982) ("Congress did not intend the Court of International Trade to have jurisdiction over appeals concerning completed transactions when the appellant had failed to utilize an avenue for effective protest before the Customs Service.").

■ The denial of a protest is not a condition precedent to this court's exercise of jurisdiction in all cases. Where a plaintiff challenged a Presidential Proclamation imposing quotas on sugar imports, the Court of Customs and Patent Appeals held:

We are persuaded that in this case, involving the potential for immediate injury and irreparable harm to an industry and a substantial impact on the national economy, the delay inherent in proceeding under § 1581(a) makes relief under that provision manifestly inadequate and, accordingly, the court has jurisdiction in this case under § 1581(i).

*United States Cane Sugar Refiners' Ass'n v. Block*, 69 CCPA 172, 175 n. 5, 683 F.2d 399, 402 n. 5 (1982); *see also Mast Industries, Inc. v. Regan*, 8 CIT 214, 221, 596 F.Supp. 1567, 1573 (1984) (quoting *United States Cane Sugar Refiners'*, 69 CCPA at 175 n. 5, 683 F.2d at 402 n. 5).

■ In the case at bar, implementation of the interim regulations is imminent. The proposed regulations have created a predict-able, but unavoidable, conflict between two competing factions of a vital service industry. Critically, with regard to plaintiff, the proposed regulations create a potential for immediate injury and irreparable harm to an industry and for a substantial impact upon the national economy which may be significant. Consequently, relief under § 1581(a) would be "manifestly inadequate." Moreover, it is imperative that Customs be unencumbered in lawfully carrying out its responsibilities under the Customs Modernization Act. With regard to defendant-intervenors, resolution of this matter will define their frontier in this industry. It is in the interest of all parties herein involved that this matter be resolved with expediency. Therefore, the Court finds that jurisdiction exists pursuant to 28 U.S.C. § 1581(i).

■ Defendant also challenges plaintiff's standing to bring this action. Defendant maintains that plaintiff fails to meet the standing requirements of 28 U.S.C. § 2631(i).[8] Defendant asserts that plaintiff has not demonstrated that Customs' action pursuant to 19 U.S.C. § 1321 has caused plaintiff any injury in fact or that the interest plaintiff seeks to protect is within the zone of interests intended to be protected or regulated by 19 U.S.C. § 1321 or other laws to which plaintiff has made reference.

Plaintiff is a trade association acting on behalf of its members. It represents licensed customs brokers and local affiliated associations throughout the United States. The courts have ruled that a plaintiff-trade association possesses standing pursuant to 28

---

**5. § 1581. Civil actions against the United States and agencies and officers thereof**
(a) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930.
28 U.S.C. § 1581(a) (1988).

**6.** 19 U.S.C. § 1514 (1988) pertains to protests against decisions of appropriate customs officers.

**7.** 19 U.S.C. § 1515 (1988) addresses the review of customs related protests.

**8. § 2631. Persons entitled to commence a civil action**
(i) Any civil action of which the Court of International Trade has jurisdiction, other than an action specified in subsections (a)–(h) of this section, may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of section 702 of title 5.
28 U.S.C. § 2631(i) (1988).
Section 702 of title 5 provides:
**§ 702. Right of review**
A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.
5 U.S.C. § 702 (1988).

U.S.C. § 2631(i). *See United States Cane Sugar Refiners' Association,* 69 CCPA at 175 n. 5, 683 F.2d at 402 n. 5, *aff'g* 3 CIT 196, 544 F.Supp. 883 (1982); *see also Mast Industries,* 8 CIT at 221, 596 F.Supp. at 1573; *American Ass'n of Exporter & Importers Textile & Apparel Group v. United States,* 7 CIT 79, 583 F.Supp. 591 (1984), *aff'd,* 751 F.2d 1239 (1985). Further, NCBFAA's members have a direct interest in the legally sound implementation of the Customs laws. NCBFAA's licensed members, when appropriately designated to make entry, make entry of merchandise valued at the dollar amounts which are the subject of the proposed interim regulations. These individuals stand to lose contractual relationships if the proposed regulations become effective, as these regulations expressly allow consignees of imported merchandise to make entries in accordance with informal procedures and increase to $200 the dollar limit under which merchandise may be entered free of duty and tax. Imposition of these regulations may be disruptive and injurious to NCBFAA's membership. Clearly, NCBFAA's membership could be adversely affected or aggrieved by agency action within the meaning of section 702 of title 5 as a result of the promulgation of the regulations pursuant to 19 U.S.C. § 1321. Accordingly, the Court holds that plaintiff has standing in this action.

### B. *Standard of Review*

■■■ Where jurisdiction lies pursuant to 28 U.S.C. § 1581(i), the standard of review is governed by 5 U.S.C. § 706 (1988) of the Administrative Procedure Act. Accordingly, the contested agency action will be reviewed based upon whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1988). Further, an administrative agency must act in accordance with the unambiguously expressed intent of Congress. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

### C. *Plaintiff's Motion for Preliminary Injunctive Relief*

Having determined that the court possesses jurisdiction pursuant to 28 U.S.C. § 1581(i) and that plaintiff has standing pursuant to 28 U.S.C. § 2631(i), the Court addresses plaintiff's motion for injunctive relief. In order for a preliminary injunction to issue, plaintiff must demonstrate: (1) that it has a likelihood of success on the merits; (2) that there is a threat of immediate and irreparable harm to plaintiff if relief is not granted; (3) that the balance of the hardships to the parties favors issuance of the preliminary injunction; and (4) that the public interest would be better served by a grant of the relief requested. *Zenith Radio Corp. v. United States,* 710 F.2d 806, 809 (Fed.Cir. 1983); *Timken Co. v. United States,* 11 CIT 504, 506, 666 F.Supp. 1558, 1559 (1987). "If any one of the requisite factors has not been established by plaintiff[ ], the motion for a preliminary injunction must be denied." *Trent Tube Div., Crucible Materials Corp. v. United States,* 14 CIT 587, 588, 744 F.Supp. 1177, 1179 (1990) *citing S.J. Stile Assocs. Ltd. v. Snyder,* 68 CCPA 27, 30, C.A.D. 1261, 646 F.2d 522, 525 (1981); *Budd Co., Wheel and Brake Div. v. United States,* 12 CIT 1020, 1022, 700 F.Supp. 35, 37 (1988).

### D. *Likelihood of Success on the Merits*

NCBFAA asserts that 19 C.F.R. § 143.26, as amended by the interim regulations to authorize a consignee to make entry of exempt merchandise, contravenes 19 U.S.C. § 1484 [9] which mandates that only an owner, purchaser, or licensed broker may make en-

---

9. Section 1484 provides:

§ 1484. Entry of merchandise

(a) Requirement and time

. . . .

(C) When an entry of merchandise is made under this section, the required documentation shall be filed either by the owner or purchaser of the merchandise or, when appropriately designated by the owner, purchaser, or consignee of the merchandise, a person holding a valid license under section 1641 of this title. When a consignee declares on entry that he is the owner or purchaser of merchandise, the appropriate customs officer may, without liability, accept the declaration. For the purposes of this subtitle, the importer of record must be one of the parties who is eligible to file the documentation required by this section. 19 U.S.C. § 1484(a)(2)(C) (1988).

try of merchandise. Plaintiff claims that § 1641 supports its assertion that the right to make entry is limited only to this class of three.[10] Plaintiff asserts that Congress' intent is unambiguously conveyed in these statutory provisions with respect to the precise question at issue. Plaintiff further asserts that 19 U.S.C. § 1498 (1988) contains no contrary language addressing the eligibility of certain parties to make entry. Plaintiff submits that review under the standard espoused in the United States Supreme Court's seminal decision in *Chevron, U.S.A.*, 467 U.S. at 842–43, 104 S.Ct. at 2781–82, requires a finding that § 1484(a)(2)(C) controls.

Plaintiff also takes issue with the manner in which Customs coordinated the comment period to run concurrently with, instead of prior to, the publication of the interim regulations. Plaintiff claims that this approach deprived interested members of the public of a meaningful opportunity to comment on the regulations prior to their actual adoption.

Plaintiff contends that the interim regulations are "rules" and their promulgation constitutes "rule making" within the meaning of the Administrative Procedure Act ("APA").[11] Plaintiff argues, therefore, that Customs is bound by the notice and comment procedural requirements [12] of 5 U.S.C. § 553(b) and (c) with respect to promulgation of these interim regulations. Plaintiff submits that the regulations are not excepted from these requirements. Plaintiff contends that the applicability of § 553's prior notice and comment procedures was recognized in *Mast Industries*, 8 CIT at 227, 596 F.Supp. at 1578, where it was also the case that Customs published interim regulations concurrently with the comment period, expedited the effective date, and conveyed its intent to consider comments prior to adopting the final rule.

Plaintiff further argues that no analysis was conducted and no findings or reports prepared with respect to the benefits, ex-

---

**10.** 19 U.S.C. § 1641(b)(1) (1988) provides:

### § 1641. Customs brokers

. . . .

**(b) Customs broker's licenses**
**(1) In general**
No person may conduct customs business (other than solely on behalf of that person) unless that person holds a valid customs broker's license issued by the Secretary under paragraph (2) or (3).

**11.** The definition of "rule" within the meaning of the Administrative Procedure Act appears at 5 U.S.C. § 551 as follows:

### § 551. Definitions
For the purposes of this subchapter—
(4) "rule" means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency. . . .
5 U.S.C. § 551(4) (1988). Rule making is addressed at 5 U.S.C. § 553 (1988).

**12.** § 553. Rule making

. . . .

(b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—
(1) a statement of the time, place, and nature of public rule making proceedings;

(2) reference to the legal authority under which the rule is proposed; and
(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.
Except, when notice or hearing is required by statute, this subsection does not apply—
. . . .
(B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.
(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. When rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title apply instead of this subsection.
(d) The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except—
(1) a substantive rule which grants or recognizes an exception or relieves a restriction;

. . . . .

(3) as otherwise provided by the agency for good cause found and published with the rule.
5 U.S.C. § 553 (1988).

penses, savings, convenience or inconvenience which will result from implementation of these interim regulations. Plaintiff contends that these undertakings are required by 19 U.S.C. § 1321(a) (1988).

Additionally, plaintiff contends that Customs is abrogating its responsibility to enforce certain laws and is providing opportunities for their violation. Specifically, plaintiff points out that §§ 128.24(e) and (d), respectively, of the proposed regulations allow entry of shipments valued at amounts up to $200 through summary manifest information, that is, without any requirement of a Harmonized Tariff Schedule of the United States (HTSUS) subheading number, and exempt these shipments from the requirement of filing an entry summary. Plaintiff contends that this lax entry procedure will create difficulties for Customs relative to the enforcement of visa requirements for apparel, intellectual property rights for patents and copyrights, and antidumping and counter-vailing duty orders. Plaintiff contends that the proposed changes will hinder the Food and Drug Administration's enforcement capabilities as well.

Plaintiff argues that, for the foregoing reasons, the proposed interim regulations are *ultra vires* and should be found void, arbitrary, capricious, an abuse of discretion, and not in accordance with law.

Customs does not dispute that Congress intended to limit the right to make entry under 19 U.S.C. § 1484 to an owner, a purchaser, or an appropriately designated Customs broker who is licensed in accordance with 19 U.S.C. § 1641. However, Customs asserts that the plain language of those statutes indicates that Congress did not require the use of a Customs broker for entries which are not made pursuant to § 1484.

Defendant contends that 19 U.S.C. § 1484 [13] is a general provision and does not apply to all entries. Defendant argues that § 1484 expressly excepts entries which are made pursuant to 19 U.S.C. § 1498. Defendant points out that § 1498 authorizes the Secretary of the Treasury to prescribe regulations concerning the entry of merchandise which is valued at monetary amounts below $2,500. 19 U.S.C. § 1498. Defendant claims that the regulations at issue were promulgated pursuant to § 1498 and, therefore, § 1484 is inapplicable here.

Further, defendant submits that § 1498(b) [14] authorizes Customs to extend any provision of § 1484 to entries made pursuant to § 1498.

Moreover, defendant asserts that the Customs Service's interpretation of a statute which it is charged with administering should be accorded a presumption of validity and the reviewing court is not at liberty to substitute its own judgment for that of the agency. Defendant contends that Customs' interpretation of 19 U.S.C. §§ 1484 and 1498 is a permissible construction.

Additionally, defendant submits that, pursuant to 19 U.S.C. § 1498, it has been Customs' longstanding practice to allow shipments which are exempt from duty and tax pursuant to 19 U.S.C. § 1321 to be entered under relaxed entry procedures without the requirement of a broker. Defendant contends that the interim regulations now expressly delineate that practice.

Further, defendant concedes that the interim regulations are "rules" within the meaning of the APA, but contends that the APA permits rule making without public notice and comment when an agency for good cause finds that notice and public procedure thereon are impracticable, unnecessary or contrary to the public interest. 5 U.S.C.

---

13. **§ 1484. Entry of merchandise**

 **(a) Requirement and time**
 (1) *Except as provided in sections 1490, 1498, 1552, 1553, and 1336(j) of this title and in subsections (h) and (i) of this section, one of the parties qualifying as "importer of record" under paragraph (2)(C) of this subsection, either in person or by an agent authorized by him in writing—*
 *(A) shall make entry. . . .*

19 U.S.C. § 1484(a)(1) (1988).

14. **§ 1498. Entry under regulations**

 **(b) Application of general provisions**
 The Secretary of the Treasury is authorized to include in such rules and regulations any of the provisions of section 1484 or 1485 of this title (relating, respectively, to entry and to declaration of merchandise generally).
19 U.S.C. § 1498(b) (1988).

§ 553(b)(3)(B). *See also* 5 U.S.C. § 553(d)(1) and (3).

Defendant also argues that, by increasing the dollar amounts in § 1321 and establishing those amounts as "floors" below which Customs may not authorize exemptions, rather than as "ceilings," Congress has already made a cost-to-benefit analysis policy determination.

Finally, defendant disputes plaintiff's allegation that the Secretary has abrogated any responsibility to enforce other laws.

The singular question before the Court is whether the Customs Service acted lawfully in seeking to implement interim regulations which affect certain administrative exemptions. The Court finds that Customs' action was lawful.

■ Interpretation of any statute requires first that the Court consider the literal meaning of the text. *Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82. In *Chevron,* the Supreme Court presented a two-part test for the judicial review of an agency's construction of the statute which it administers. The court stated:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* (footnotes omitted).

■ Applying the first prong of the *Chevron* standard of review to the relevant statutory provisions, the Court finds that Congress has made its intent explicably clear with regard to the Secretary's scope of authority. 19 U.S.C. § 1498 explicitly authorizes the Secretary to promulgate regulations with respect to entry of merchandise. Additionally, 19 U.S.C. § 1484(a)(1) expressly excepts entries which are made pursuant to § 1498. The keystone in this matter is § 1498(b). This provision authorizes the Secretary to include in regulations it may prescribe any of the provisions of § 1484 relating to entry and to declaration of merchandise.

Therefore, read in conjunction, §§ 1498 and 1484 support the conclusion that Customs has acted lawfully in promulgating regulations for the declaration and entry of exempt merchandise and the second prong of the *Chevron* test need not be reached.

■ The Mod Act declared the will and the objective of Congress and the President to modernize Customs laws. Section 651 of the Act amended section 321 of the Tariff Act of 1930 with regard to administrative exemptions on low value shipments. By this amendment, the dollar limit under which merchandise could be entered free of duty and tax was raised to $200, in essence, converting the previous monetary "ceiling" to a "floor." *See, supra,* at 4 n. 2. Congress functions in an investigatory capacity. By its act, Congress indicated its policy determination with respect to cost-to-benefit analysis of expense and inconvenience versus revenue raised with regard to the entry of exempt low value shipments. That determination is made clear by the legislative history of section 651 of the Mod Act. Congress stated:

> This amendment is necessitated by inflation and the substantial increases in passenger arrivals and low-value entries. It will permit Customs to streamline processing. *The current amounts are not sufficiently high for the statutorily stated goal of limiting expense to the Government disproportionate to the revenue that is collected.*

H.R.Rep. No. 361, 103rd Cong., 1st Sess., pt. 1, 145 (1993), *reprinted in* 1993 U.S.C.C.A.N. 2552, 2695 (emphasis added). *See also* S.Rep. No. 189, 103rd Cong., 1st Sess. 93 (1993).

The concerns that Congress had are clear. The proposed interim regulations seek to implement section 651 of the Act by implementing Congress' objective that Customs laws be modernized and made cost effective and the Court will not, at this point, thwart the will of Congress through judicial intervention. Therefore, the Court finds that Customs proceeded under valid authority in creating the contested regulations and that it acted reasonably in not presenting the public with any formal analyses pursuant to 19 U.S.C. § 1321(a) (1988) in this instance.

Moreover, the Customs Service is charged with overseeing the entry of merchandise into this country. In carrying out its charge, of necessity, it must maintain a dual focus, responding to the external demands of commerce and to its own internal needs for optimal effectiveness. To tell Customs that it cannot make the changes that will allow it to make better use of its resources would be to render it an injustice.

 The Court agrees that the proposed interim regulations clearly fall under the rubric of rule making. 5 U.S.C. § 553. Although, in form, the published interim regulations were not labeled a "notice," in substance they adhered to the requirements of 5 U.S.C. § 553(b). The published document which appeared in the FEDERAL REGISTER detailed the interim regulations in their entirety and articulated the basis of authority for their promulgation. The regulations indicated a comment period of 30 days duration, ending on July 13, 1994, and declared that, unless by contrary determination if good cause was shown that the regulations should not be given effect, the regulations became effective on July 28, 1994, 45 days after publication. *Rules and Regulations*, 59 Fed. Reg. at 30,289, 30,292. Hence, the rules became effective more than 30 days after publication in conformity with 5 U.S.C. § 553(d) (1988). Moreover, the regulations explained the reasons for their expedited implementation. *Id.*, 59 Fed.Reg. at 30,292. Therefore, the regulations gave adequate notice as to the basis for the proposed changes in the Customs law, provided the substance of those proposed changes stated the time allowed and the reasons for constraints with respect to commentary, and announced their effective date.

It is noteworthy also, that Customs allowed 15 days between the commentary deadline and the date the regulations were to become effective, a longer period then was allowed in *Mast Industries*, 8 CIT at 216–17, 596 F.Supp. at 1570 (interim regulations upheld under the foreign affairs function exception of 5 U.S.C. § 553(a)(1) (1988)).

Further, interested persons were not foreclosed from meaningful participation in Customs' decision-making process with respect to these regulations. *See* 5 U.S.C. § 553(c). Plaintiff, in fact, submitted a response to the proposed regulations by letter dated July 1, 1994. Further, Customs explicitly conveyed its intent to withdraw the regulations before their effective date if good cause was articulated to support that action. *Rules and Regulations*, 59 Fed.Reg. at 30,292–293. Obviously Customs could not make a determination resulting in such an action if comments were not to be effectively considered. *See United States v. Chemical Found., Inc.*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926) (public officials are presumed to have properly discharged their duties). Customs also conveyed its intent, if the regulations are made effective, to "fully consider substantive comments, and decide whether the interim regulation needs amendment before its promulgation as a final rule." *Rules and Regulations*, 59 Fed.Reg. at 30,293. That Customs was willing to continue to evaluate the regulations even after the regulations became effective indicates that any comments submitted during the 30–day commentary period would continue to impact upon decision-making. Therefore, interested persons were made a part of the decision-making process with regard to these regulations in conformity with the requirements of 5 U.S.C. § 553.

 Notwithstanding, Customs' "good cause" exception argument pursuant to § 553(b)(3)(B) is reasonable based on the context within which these regulations were promulgated. The "good cause" exception is fact or context-dependent. *Mid–Tex Elec. Coop., Inc. v. Federal Energy Regulatory Comm'n*, 822 F.2d 1123, 1132 (D.C.Cir.1987). The interim status of the challenged regula-

tions is a significant factor in the Court's conclusion.

Accordingly, the Court finds that Customs has not violated the notice and comment requirements of the Administrative Procedure Act.

■ Lastly, the Court finds that, by promulgating regulations pursuant to § 1321, Customs has not abrogated its responsibility to enforce laws relevant to the entry of merchandise into this country. Plaintiff's argument has no merit on this point. The Court has adequately discussed, *supra*, its conclusion that Customs did not abrogate its responsibilities under § 1321(a). With regard to the entry of exempt merchandise pursuant to §§ 128.24(e) and (d) of the proposed regulations under informal entry procedures, the interim regulations require, among other things, disclosure of the country of origin and a description of the merchandise as well as its value. *Rules and Regulations,* 59 Fed. Reg. at 30,291. Additionally, Customs retains authority to inspect, examine or appraise all imported merchandise. *See* 19 U.S.C. § 1499 (1988). Furthermore, 19 C.F.R. § 128.24(a) (1993) is in place and provides, with regard to eligibility for informal entry procedures, that:

> [s]uch procedures, however, may not be used for prohibited or restricted merchandise, merchandise which is subject to a quota or other quantitative restraints, or for any articles precluded from informal entry procedures by virtue of section 498, Tariff Act of 1930, as amended, (19 U.S.C. 1498).

*See also* 19 C.F.R. § 10.153(g) (1993). Therefore, Customs is abrogating no responsibility.

Based on the foregoing discussion, the Court finds no need to discuss in any detail the remaining three criteria for a preliminary injunction as the reasoning, *supra,* dismisses any arguments plaintiff has with regard to the balancing of hardships and to the public interest.

**E. *Defendant–Intervenors' Cross Claims***

■ ACCA, UPS, IBC, TNT, FEDEX and DHL have presented cross claims con-

testing the interim regulations' requirement of an "entry" filing for merchandise which is authorized to be exempt pursuant to section 321(a)(2). Cross claimants specifically contest sections 10.151, 10.152, 128.23, 128.24 and 141.4(e) of these interim regulations. *See Rules and Regulations,* 59 Fed.Reg. at 30,293, 30,295.

Cross claimants claim that past and current entry procedures reflect the legislature's recognition that an entry need not be made on exempt merchandise. These parties contend that as Customs has not provided any basis for the new requirement, its action is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

Cross claimants request that the Court preliminarily and permanently enjoin Customs from implementing these provisions and further request that the interim regulations' new "floor" amounts be implemented immediately.

The Court reiterates that the Secretary is empowered to promulgate regulations with respect to *entry* of low value exempt merchandise pursuant to 19 U.S.C. § 1498(b). *See also* 19 U.S.C. § 1484. Therefore, the Court's decision in this case incorporates a response to this issue.

*Conclusion*

Plaintiff has not convinced the Court to grant the extraordinary relief requested and a preliminary injunction cannot issue on such infirm grounds as are presented here. Plaintiff's motion for a preliminary injunction is denied. Therefore, the TRO is revoked. The relief sought by cross claimants is also denied.

Accordingly, the Court affirms Customs' decision to implement interim regulations which increase the dollar limit on certain administrative exemptions and expand the class of persons deemed eligible to make informal entries of exempt merchandise.

This case having been duly submitted for decision following plaintiff's motion for a preliminary injunction and for judgment, and the Court, after due deliberation, having rendered a decision herein; now then, in accordance with said decision, it is hereby

**ORDERED** that plaintiff's motion for a preliminary injunction is denied and the Temporary Restraining Order is revoked; and it is further

**ORDERED** that defendant-intervenors' cross claims requesting injunctive relief are denied; and it is further

**ORDERED** that the Customs Service's promulgation of interim regulations which increase the dollar limit on certain administrative exemptions and expand the class of persons deemed eligible to make informal entries of exempt merchandise is affirmed; and it is further