59 F.3d 1219
 17 ITRD 1481
 NATIONAL CUSTOMS BROKERS AND FORWARDERS ASSOCIATION OF
AMERICA, INC., Plaintiff-Appellant,
v.
The UNITED STATES, Lloyd Bentson, Secretary of the Treasury,
John P. Simpson, Deputy Assistant Secretary of the Treasury
for Regulatory, Tariff and Trade Enforcement, and George J.
Wiese, Commissioner of Customs, Defendants-Appellees,
and
Air Courier Conference of America, UPS Worldwide Forwarding,
Inc. UPS Customhouse Brokerage, Inc., International Bonded
Couriers, Inc., TNT Skypak International Express, Inc., and
Federal Express Corporation, Defendants-Appellees,
and
DHL Airways, Inc., Defendant-Appellee.
 No. 94-1476.
 United States Court of Appeals, Federal Circuit.
 July 5, 1995.
Rehearing Denied; Suggestion for Rehearing In Banc Declined
 Sept. 12, 1995.
 
 Laurence M. Friedman, Tomkins & Davidson, New York City, argued for plaintiff-appellant. With him on the brief were Harvey A. Isaacs and Brian S. Goldstein.
 Rhonda K. Schnare, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for defendants-appellees, the U.S. With her on the brief were Frank W. Hunger, Asst. Atty. Gen. and David M. Cohen, Director. Of counsel was Richard McManus, U.S. Customs Service.
 Evelyn M. Suarez, Ross & Hardies, Washington, DC, argued for defendants-appellees. With her on the brief was Myles J. Ambrose. Also on the brief was Eric L. Hirschhorn, Winston & Strawn, Washington, DC.
 Before NEWMAN, Circuit Judge, SKELTON, Senior Circuit Judge, and RADER, Circuit Judge.
 RADER, Circuit Judge.
 
 
 1
 In 1994, the United States Customs Service (Customs) issued interim regulations allowing a consignee to enter merchandise valued at $200 or less into the United States without using a licensed customs broker. Express Consignments; Formal and Informal Entries of Merchandise; Administrative Exemptions, 59 Fed.Reg. 30,289 (Dep't Comm. June 13, 1994) (Interim Regulations ). The National Customs Brokers and Forwarders Association of America, Inc. (NCBFAA) challenged the interim regulations before the Court of International Trade, which dismissed NCBFAA's complaint. National Customs Brokers & Forwarders Ass'n of America, Inc. v. United States, 861 F.Supp. 121 (1994) (NCBFAA ). Because Customs acted within its discretion and followed the proper procedures when it issued the interim regulations, this court affirms.
 
 BACKGROUND
 
 2
 NCBFAA is a trade association of customs brokers licensed under 19 U.S.C. Sec. 1641 (1988 & Supp. V 1993). Generally, a licensed customs broker is the only person, other than the owner or purchaser, who may "enter" merchandise into the United States. 19 U.S.C. Sec. 1484(a) (Supp. V 1993). Section 1484(a)(1) contains an exception, however, for entry under regulations as specified in 19 U.S.C. Sec. 1498 (1988 & Supp. V 1993). Section 1498(a)(1) authorizes the Secretary of the Treasury (Secretary) to prescribe regulations for the entry of merchandise valued at $2,500 or less.
 
 
 3
 Title 19 also authorizes the Secretary to prescribe regulations for duty-free importation of merchandise of too little value to justify the expense of duty collection. 19 U.S.C. Sec. 1321 (Supp. V 1993). Congress amended section 1321 in 1993 to increase the limit on duty-free entry. North American Free Trade Agreement Implementation Act, Pub.L. No. 103-182, Sec. 651, 107 Stat. 2057, 2209 (1993). As amended, section 1321(a)(2) permits duty-free entry of merchandise valued at $200 ($100 for most gifts) or less. This section also grants the Secretary discretion to set a higher limit.
 
 
 4
 On June 13, 1994, Customs, on behalf of the Secretary, published the challenged interim regulations under sections 1498 and 1321. Interim Regulations, 59 Fed.Reg. at 30,290. The interim regulations added new section 143.26 to title 19 of the Code of Federal Regulations. Section 143.26(b) authorizes consignees to enter shipments of merchandise that meet the requirements of section 1321(a)(2), including the requirement that the merchandise be valued at $200 or less. Id. at 30,296. The interim regulations also added 19 C.F.R. Sec. 111.3(e), a clarification that persons entering merchandise under section 1498 need not be licensed customs brokers except as required by section 143.26. Id. at 30,294.
 
 
 5
 Customs solicited public comments on the interim regulations. Interim Regulations, 59 Fed.Reg. at 30,292. The solicitation stated that Customs would consider comments received by July 13, 1994, 30 days after publication. Id. at 30,289, 30,292. The solicitation also stated that Customs would implement the regulations on July 28, 1994, 15 days later, unless the comments showed good cause for not implementing the regulations on an interim basis. Id. at 30,289, 30,292-93. The solicitation further indicated that Customs would not consider substantive comments until after it implemented the regulations and reviewed the comments in light of experience during the interim period. Id. at 30,293.
 
 
 6
 NCBFAA filed comments opposing implementation of the interim regulations on June 24 and again on July 1, 1994. On July 25, 1994, three days before the scheduled effective date, NCBFAA challenged the regulations in the Court of International Trade. NCBFAA, 861 F.Supp. at 124. The Court of International Trade granted a temporary restraining order prohibiting implementation of the regulations. Id. Then on August 16, 1994, the court denied NCBFAA's motion for a preliminary injunction and dismissed the suit. Id. at 133. NCBFAA appealed.
 
 
 7
 After the Court of International Trade dismissed NCBFAA's challenge, Customs implemented the interim regulations on August 23, 1994. Express Consignments; Formal and Informal Entries of Merchandise; Administrative Exemptions, 59 Fed.Reg. 43,283 (Dep't Comm. Aug. 23, 1994). Customs adopted final rules substantially identical to the interim regulations on April 14, 1995. Express Consignments; Formal and Informal Entries of Merchandise; Administrative Exemptions, 60 Fed.Reg. 18,983 (Dep't Comm. Apr. 14, 1995).
 
 DISCUSSION
 I.
 
 8
 The primary question on appeal is whether 19 U.S.C. Secs. 1321 and 1498 authorize Customs, on behalf of the Secretary, to implement regulations such as 19 C.F.R. Secs. 111.3(e) and 143.26(b) permitting consignees to enter merchandise into the United States. This court reviews Customs' construction of trade statutes under a standard of review supplied by the Supreme Court. See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984). Under this review standard, this court must first determine whether the trade statutes have directly spoken to the issue of who may enter merchandise under sections 1321 and 1498. If the trade statutes are silent or ambiguous on this issue, then this court must determine whether Customs' decision to allow consignees to make entry was based on a permissible construction of the statutes. Id.
 
 
 9
 First, the plain language of sections 1321 and 1498 authorizes the Secretary to decide who may enter the covered merchandise. Section 1498(a), titled "Entry under regulations," authorizes the Secretary "to prescribe rules and regulations for the declaration and entry of" merchandise valued at $2,500 or less. Similarly, section 1321(a) authorizes the Secretary, "under such regulations as he shall prescribe," to admit merchandise valued at $200 ($100 for gifts) or less on a duty-free basis. These statutes empower Customs, on behalf of the Secretary, to regulate entry of the covered merchandise.
 
 
 10
 Section 1484, moreover, does not limit Customs' authority to regulate entry of the separate class of merchandise covered by section 1498. Section 1484 plainly carves out an exception for entries under section 1498:Except as provided in section[ ] ... 1498 ... one of the parties qualifying as "importer of record" under paragraph (2)(B) ... shall ... using reasonable care [make and complete entry].
 
 
 11
 19 U.S.C. Sec. 1484(a)(1) (emphasis added). This exception relieves owners or purchasers of section 1498 merchandise from the section 1484 requirement of using an "importer of record" to enter their merchandise. Therefore, while section 1484(a)(2)(B) provides that a consignee may not act as "importer of record," this limitation is irrelevant to entry under section 1498. Section 1484 does not speak to whether a consignee may enter merchandise under section 1498.
 
 
 12
 Section 1498(b) reinforces Customs' authority to allow persons excluded from making section 1484 entries to enter merchandise under section 1498. Section 1498(b) authorizes Customs, on behalf of the Secretary, "to include in such rules and regulations [issued under section 1498(a) ] any of the provisions of section 1484." By authorizing Customs to include some or all of the section 1484 provisions in the regulations governing section 1498 entries, title 19 necessarily authorized Customs to exclude any of the section 1484 provisions. Thus section 1484 does not limit Customs' discretion to decide who may enter merchandise under section 1498.
 
 
 13
 Similarly, the provisions governing licensing of customs brokers in 19 U.S.C. Sec. 1641 do not limit Customs' discretion to decide who may enter merchandise under sections 1321 and 1498. Section 1641(b)(1) provides that only a licensed broker may conduct "customs business" on behalf of a principal. This language, however, arises in the context of sections 1321 and 1498 which explicitly authorize Customs to prescribe rules for entry of special classes of merchandise. Read in context, therefore, section 1641 does not deny Customs authority to promulgate regulations governing entry of section 1321 and section 1498 merchandise. Stated otherwise, title 19 does not expressly dictate who may enter this special merchandise. See Chevron, 467 U.S. at 842, 104 S.Ct. at 2781.
 
 
 14
 Thus, this court must move to the second Chevron question--whether Customs' decision to allow consignees to make entry under sections 1321 and 1498 was "based on a permissible construction of the statute." Chevron, 467 U.S. at 843, 104 S.Ct. at 2782. NCBFAA alleges that Customs' construction of sections 1321 and 1498 was flawed because Customs had not previously allowed consignees to make entry. Assuming for the sake of argument that NCBFAA is correct, however, NCBFAA provides no explanation of why past practice foreclosed Customs from exercising its discretion under sections 1321 and 1498 to allow entry by consignees. The Supreme Court "has rejected the argument that an agency's interpretation 'is not entitled to deference because it represents a sharp break with prior interpretations' of the statute in question." Rust v. Sullivan, 500 U.S. 173, 186, 111 S.Ct. 1759, 1768-69, 114 L.Ed.2d 233 (1991) (quoting Chevron, 467 U.S. at 862). NCBFAA does not allege or show any basis for rejecting Customs' construction as unreasonable. Accordingly, this court affirms that Customs acted within its authority in implementing 19 C.F.R. Secs. 111.3(e) and 143.26(b) allowing consignees to enter merchandise under 19 U.S.C. Secs. 1321 and 1498.
 
 II.
 
 15
 Under 19 U.S.C. Sec. 1321, as amended in 1993, the interim regulations raised the dollar limit on duty-free entry. Interim Regulations, 59 Fed.Reg. at 30,290. Amended section 1321 required Customs, on behalf of the Secretary, to raise the duty-free limit to the specified level:
 
 
 16
 The Secretary of the Treasury, in order to avoid expense and inconvenience to the Government disproportionate to the amount of revenue that would otherwise be collected, is authorized, under such regulations as he shall prescribe, to--
 
 
 17
 ....
 
 
 18
 (2) admit articles free of duty and of any tax imposed on or by reason of importation, but the aggregate fair retail value ... shall not exceed an amount specified by the Secretary by regulation, but not less than [$200 ($100 for most gifts) ].
 
 
 19
 19 U.S.C. Sec. 1321(a) (emphasis added). Section 1321 authorizes Customs to set the dollar limit on duty-free entry, but this authority has limits. Section 1321 requires that the limit be "not less than" the specified minimum level. Customs set the limit at the minimum level in the interim regulations. Interim Regulations, 59 Fed.Reg. at 30,290. Customs had no discretion to set a lower limit.
 
 
 20
 Because section 1321 required Customs to set the dollar limit on duty-free entry at or above the specified minimum level, Customs had no reason to independently consider the revenue effect of raising the limit to that level. Indeed, the language of section 1321 states that collecting duties on merchandise valued below the specified minimum level would only generate disproportionate "expense and inconvenience." 19 U.S.C. Sec. 1321(a). The statute itself thus stated the revenue effect of setting the limit at that level. Because the statute has "directly spoken to the precise question at issue," Chevron, 467 U.S. at 842, 104 S.Ct. at 2781, Customs had no authority to substitute its judgment for the requirements of title 19. Customs' action gave effect to "the unambiguously expressed intent of Congress," Chevron, 467 U.S. at 842-43, 104 S.Ct. at 2781-82, and must be affirmed.
 
 III.
 
 21
 Customs deferred consideration of substantive comments on the interim regulations until after implementation. Interim Regulations, 59 Fed.Reg. at 30,293; see also Express Consignments; Formal and Informal Entries of Merchandise; Administrative Exemptions, 60 Fed.Reg. 18,983, 18,985-90 (Dep't Comm. Apr. 14, 1995) (final rule including discussion of comments received during interim period). Customs explained that implementation would provide experience for assessing the merits of the interim regulations. Interim Regulations, 59 Fed.Reg. at 30,293.
 
 
 22
 The Administrative Procedure Act (APA), 5 U.S.C. Secs. 551-559 (1994), generally requires public notice before promulgation of regulations. 5 U.S.C. Sec. 553(b). Section 553(b) includes a "good cause" exception to the notice requirement, however:
 
 
 23
 General notice of proposed rule making shall be published in the Federal Register.... Except when notice or hearing is required by statute, this subsection does not apply--
 
 
 24
 ....
 
 
 25
 (B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.
 
 
 26
 5 U.S.C. Sec. 553(b)(B). When the good cause exception applies, an agency need not provide section 553(b) notice. As a result, the agency need not consider comments received in response to the notice before implementing the regulations, as 5 U.S.C. Sec. 553(c) would otherwise require.
 
 
 27
 Section 553(b)(B) requires an agency to "incorporate[ ] the [good cause] finding and a brief statement of reasons therefor in the rules issued." In promulgating its interim regulations, Customs properly invoked this good cause procedure. Customs explained in its promulgation that considering comments first would have been both "unnecessary" and "contrary to the public interest":
 
 
 28
 [E]xisting rights and obligations are not otherwise changed. The agency believes the public wants these new statutory minimums to become effective as soon as possible as the public should benefit from the efficiencies and savings resulting therefrom. In addition, the agency does not believe the public needs time to conform its conduct so as to avoid violation of these regulations. The due and timely execution of the agency's responsibilities would be unnecessarily impeded by a time consuming notice and comment period. The agency believes such delay is unnecessary because it does not expect the public to object to the regulations being promulgated as they merely provide the relief that Congress intended.
 
 
 29
 Interim Regulations, 59 Fed.Reg. at 30,292 (emphasis added). This explanation satisfies the "brief statement of reasons" requirement of section 553(b)(B) of the APA.
 
 
 30
 Customs found, and stated in the interim regulations, that delaying their implementation pending formal notice and comment was both unnecessary and contrary to the public interest--unnecessary because Congress, in 19 U.S.C. Sec. 1321 as amended, directed Customs to change the regulations, and contrary to the public interest because the public would benefit from the amended regulations. These findings were not arbitrary or capricious and did not constitute an abuse of discretion. 5 U.S.C. Sec. 706(2)(A) (1994) (standard of review).
 
 
 31
 Customs did not expressly cite section 553(b)(B) in the interim regulations. This slight oversight, however, does not prejudice Customs' invocation of the good cause exception. The interim regulations provided a full and reasonable explanation of Customs' reasons for invoking the good cause exception. Moreover, Customs expressly noted that the interim regulations were "not subject to the notice and public procedure requirements of 5 U.S.C. 553." Interim Regulations, 59 Fed.Reg. at 30,293. Thus, while "[i]t is well settled that an agency's action may not be upheld on grounds other than those relied on by the agency," Ad Hoc Committee of AZ-NM-TX-FL Producers of Gray Portland Cement v. United States, 13 F.3d 398, 401 n. 8, --- Fed.Cir. (T) ----, ---- (Fed.Cir.1994), the interim regulations made clear that Customs relied on the good cause exception of section 553(b)(B). This court affirms that Customs complied with the APA's procedural requirements when implementing the interim regulations.
 
 CONCLUSION
 
 32
 Customs acted within its discretion in implementing 19 C.F.R. Secs. 111.3(e) and 143.26(b), allowing consignees to enter into the United States merchandise covered by 19 U.S.C. Secs. 1321 and 1498. Customs also complied with the Administrative Procedure Act in implementing the interim regulations.
 
 COSTS
 
 33
 Each party shall bear its own costs.
 
 
 34
 AFFIRMED.